UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHANTA U. DARAMY-ANDREWS,

    *Plaintiff*,

v.

LIBERTY INSURANCE CORPORATION,

    *Defendant*.

Civil Action No. 22-1694 (TJK)

## MEMORANDUM OPINION

In April 2019, Plaintiff's home and personal property were damaged by flooding caused by a burst pipe in her basement. Defendant, her insurer, determined coverage and compensated her for her loss based on its findings. Plaintiff now sues, claiming that she is entitled to much more for her losses. She brings claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Defendant moves for summary judgment, arguing that Plaintiff's policy required her to sue within a year of the flood, thus barring her first two claims, and that the existence of the policy—an express contract—means that the unjust enrichment claim fails too. Defendant is right on both fronts, so the Court will grant its motion for summary judgment on all claims.

**I.    Background**

    **A.    Factual Background**

On April 21, 2019, a flooding from a burst pipe damaged Plaintiff's home and personal property. *See* ECF No. 33-1 ¶ 3; ECF No. 33-3 at 3, 5. At the time, Plaintiff held a homeowner's insurance policy issued by Defendant that covered damage to her house and personal belongings,

subject to certain conditions. ECF No. 33-1 ¶ 2; *see* ECF No. 33-4 at 15–16.[1] Among other things, the policy required her to "[p]repare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss" and to "[a]ttach all bills, receipts and related documents that justify the figures in the inventory." ECF No. 33-4 at 22. And "within 60 days after [Defendant's] request," Plaintiff had to submit her "sworn proof of loss" setting forth various information, including "[t]he inventory of damaged personal property." *Id.* at 22–23. The policy also contains another key deadline. It mandated that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss," which in this case is April 21, 2019. *Id.* at 24.

After Plaintiff reported the claim, Defendant contracted a company, 1-800-Packouts, to remove and store her damaged personal property. ECF No. 34-1 ¶ 3; *see* ECF No. 34-4. As part of its investigation, Defendant conducted an "examination under oath" of Plaintiff in October 2019. *See* ECF No. 34-5. At that point, she had hired an attorney, who was with her during the examination and has represented her since. ECF No. 33-1 ¶ 9; ECF No. 35-1. The interview revealed that Plaintiff had not, consistent with her insurance policy, compiled an inventory of the damaged items. ECF No. 34-5 at 12. The parties thus suspended the examination so that Plaintiff and her counsel could schedule an inspection with 1-800-Packouts to complete a detailed inventory, in hopes of "eliminat[ing] all of the problems and questions that have arisen on th[e] claim." *Id.* at 35.

On November 1, 2019, Defendant sent Plaintiff a letter about her "claim for supplemental damages." ECF No. 34-6 at 1. It informed her that Defendant had determined it owed Plaintiff

---

[1] Plaintiff has held that insurance policy since 2012 and renewed it annually. ECF No. 23-2 at 1; ECF No. 34-5 at 10–11. The policy relevant here was effective from January 26, 2019, to January 26, 2020. ECF No. 23-2 ¶ 2.

2

$26,216.31 for repairs to her house and $6,769.51 for personal-property losses, for roughly $33,000. *Id.*[2] After adjusting for "prior payment(s)" and other items, the letter explained, the amount owed and paid was $950. *Id.* Eleven days later, Defendant emailed Plaintiff's attorney the proof-of-loss form that she would need to complete by December 12, 2019. ECF No. 34-10 at 6. Counsel responded that his "client [wa]s working to get the inventory completed" and asked for a ten-day extension, which Defendant granted. *Id.* at 5. On December 20, Plaintiff's attorney informed Defendant that his client "ha[d] not been able to return to the storage to complete the inventory of [her] personal property . . . [d]ue to [her] job schedule" but would do so on December 27. *Id.* at 3. So Defendant granted Plaintiff a "final extension" until January 27, 2020 to document and submit her inventory list. *Id.* at 2. Although she submitted a proof-of-loss statement by that deadline, *id.* at 2, Defendant promptly told her about several deficiencies, *id.* at 1. For example, the statement contained no relevant cost information or photos and did not separate the items she claimed were damaged during the 2019 flooding from those damaged during earlier flooding. *Id.* So Defendant gave Plaintiff yet more time to complete the proof-of-loss statement, until February 18, 2020, noting that "[t]here w[ould] be no additional extensions" beyond that date. *Id.* Plaintiff never provided a full inventory of her claimed losses, a failure she attributes to the COVID-19 pandemic. ECF No. 33-3 at 7–8.

On March 5, 2020—about six weeks short of the one-year deadline to file suit—Defendant sent a letter to Plaintiff "follow[ing] up regarding [her] recent request for [Defendant] to" conduct

---

[2] Defendant contends that it paid Plaintiff $21,483 to repair her house, $6,069 to clean and repair her personal property, and $7,280 to cover her living expenses while repairs were ongoing. ECF No. 33-1 ¶ 4; ECF No. 33-3 at 5–7. Plaintiff disputes that Defendant paid her any money to cover the cleaning and repair of her personal property. ECF No. 34-1 ¶ 4. But any disagreement between the parties over the precise amounts paid to Plaintiff and what losses they were intended cover does not affect the Court's determination that Plaintiff's claims are time-barred.

3

the inventory for her. ECF No. 34-9 at 1. Defendant declined to do so, noting it was "the insured's duty after loss to provide the details needed for [an] investigation." *Id.* As Plaintiff failed to meet her "conditions and duties" under the policy, including by providing "the required documentation and details," Defendant could not "proceed with the claim process at this time." *Id.* The letter further noted that Defendant "will wait until [Plaintiff] is able to complete the required Proof of Loss" for the water damage and "will then be able to complete the meeting that was started on [October 18, 2019]"—the date of the examination under oath—"and make a final coverage decision based on what is submitted and reviewed." *Id.* The letter also included excerpts of the relevant policy provisions laying out Plaintiff's "Duties After Loss" and concluded: "At this time, our investigation is suspended. We will be happy to reopen the claim should the insured comply with the conditions of the policy and complete the signed proof of loss." *Id.* at 2. The record reflects no further activity by either party until Plaintiff sued more than two years later.

### B. Procedural History

On April 20, 2022, Plaintiff sued in the Superior Court for the District of Columbia. *See* ECF No. 1-1; ECF No. 7 at 2–4.[3] A few months later, the case was removed to this Court. ECF No. 1. Plaintiff brings three claims. First, she alleges Defendant breached the insurance contract by, among other things, failing to pay for the repairs to her home and for her total loss of personal property. ECF No. 8 ("Am. Compl.") ¶¶ 18–20. Second, she claims Defendant breached the implied covenant of good faith and fair dealing by refusing to accept her claim, delaying adjustment, and "closing the case without justification." *Id.* ¶¶ 21–25. Third, she contends Defendant was unjustly enriched because it "realiz[ed] substantial premium[s]" while "withh[olding] the

---

[3] Plaintiff first sued the wrong corporate entities. *See* ECF No. 1-1. She later amended her complaint to name Defendant only. *See* ECF No. 6 at 1 & n.1; ECF No. 8.

insurance payments" it owed her. *Id.* ¶¶ 26–28. After discovery, Defendant moved for summary judgment in part based on the contractual one-year limitations period. *See* ECF No. 20-2 at 4.

## II. Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" if it is capable of affecting the outcome of the litigation under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must "view the evidence in the light most favorable to the [nonmovant]"—here, Plaintiff—"draw all reasonable inferences in that party's favor, and avoid weighing the evidence or making credibility determinations." *Thompson v. District of Columbia*, 967 F.3d 804, 812–13 (D.C. Cir. 2020) (internal quotation marks omitted). But, in opposing summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). So if the evidence on which the nonmovant relies in opposing summary judgment is "'merely colorable' or 'not significantly probative'" such that no reasonable factfinder could rule in that party's favor based on that evidence, then "summary judgment may be granted." *Bradley v. D.C. Pub. Sch.*, 222 F. Supp. 3d 24, 28 (D.D.C. 2016) (quoting *Anderson*, 477 U.S. at 249–50). Thus, although at summary judgment the Court does not weigh the evidence or find the facts, the Court must decide whether the nonmovant's evidence is probative enough that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016).

**III.   Analysis**

Defendant argues that Plaintiff's breach-of-contract and implied-covenant-of-good-faith claims are barred by the statute of limitations, and that her unjust-enrichment claim is barred by the express contract between the parties. Plaintiff, for her part, does not dispute the validity of the statute-of-limitations provision. Nor does she contest that she filed her suit too late. Rather, she argues that Defendant may not assert the limitations period as a defense. Specifically, she claims that Defendant's March 2020 letter suspending its investigation "lulled" her into missing the deadline to sue, and that Defendant's November 2019 letter explaining the payments Defendant issued was an admission of liability by which Defendant "waived" the limitations period. She also argues that her implied-covenant-of-good-faith claim survives any contractual bar because Defendant's "bad faith" actions occurred during and after the limitations period or because the District of Columbia suspended all statutes of limitations until March 30, 2021. And as for her unjust-enrichment claim, she appears to ask the Court to look beyond black-letter contract law to give her relief. None of her arguments holds water.

**A.   Plaintiff's Breach-of-Contract Claim is Time-Barred, and No Exception to the Strict Enforcement of Contractual Limitations Periods Applies**

Courts generally recognize the validity of contractual provisions limiting the period within which an insurance-policy holder can sue. *See Nkpado v. Standard Fire Ins. Co.*, 697 F. Supp. 94, 98 (D.D.C. 2010). Indeed, under District of Columbia law, which governs this dispute, limitations periods are "strictly" enforced. *Ketten v. United States*, No. 21-cv-2437 (RMM), 2024 WL 1908660, at *4 (D.D.C. May 1, 2024) (citing *East v. Graphic Arts Indus. Joint Pension Tr.*, 718 A.2d 153, 156 (D.C. 1998)). Still, a defendant's actions may allow a plaintiff to overcome such a bar. But as explained below, neither exception applies here, and Defendant is entitled to summary judgment on Plaintiff's breach-of-contract claim.

6

### 1. Defendant Did Not "Lull" Plaintiff into Missing the Deadline to Sue

Under the so-called "lulling doctrine," a defending insurance company may be "estopped" from asserting a statute-of-limitations defense if it "has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run." *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986) (citation omitted); *see 1426 Wisconsin LLC v. Travelers Indem. Co. of Am.*, 110 F. Supp. 3d 259, 264 (D.D.C. 2015). That is, the defendant "must have done something" amounting to "an affirmative inducement . . . to delay bringing action"—for instance, by making "misleading representations" on which the plaintiff then relied detrimentally. *Bailey*, 516 A.2d at 937, 939 n.5. This estoppel exception is a "narrow[]" one, and courts are especially "reluctant to find that a claimant has been misled by an insurance company" if she was represented by counsel, as Plaintiff was here. *Id.* at 937, 939.

Nothing in the record suggests Defendant lulled or induced Plaintiff to delay filing suit. Nor did Defendant make any misleading representations that could have made Plaintiff think the limitations period would not apply to her. Plaintiff knew since the flooding that she had a potential claim against Defendant. *Cf. Gardner v. Eerie Ins. Co.*, 639 F. Supp. 3d 135, 143 (D.D.C. 2022) (rejecting argument that limitations period could have started only when insurance company conveyed it would stop making payments because "the limitations provision starts at the time of loss"). And by November of that year, she was "on notice" that Defendant's estimated payments would come up short of what she had hoped for. *Martinez v. Hartford Cas. Ins. Co.*, 429 F. Supp. 2d 52, 60–61 (D.D.C. 2006). Yet she sat on her right to sue.

True, there were delays in Defendant's processing of her claim. Putting aside that Plaintiff need not have waited for that process to play out to file suit, though, those delays were caused by Plaintiff's own non-compliance with the terms of her policy. She had to "[p]repare an inventory

7

of [all her] damaged personal property showing the quantity, description, actual cash value and amount of loss" along with "all bills, receipts, and related documents that justify the figures in the inventory." ECF No. 33-4 at 22. As of October 19, 2019, when Plaintiff was examined under oath, she had not done so. *See* ECF No. 34-5 at 12. On November 1, 2019, Defendant timely provided her with its calculation of the reimbursable damages related to her home and personal property—amounts that she believed were inadequate. *See* ECF No. 34-6. Thus, Plaintiff had more than five months before the expiration of the one-year contractual limitations period to assess, with help from counsel, whether to sue. She didn't. Still, after Defendant informed her that a "detailed inventory" was "the most important document" to "mov[e]" her claim along, ECF No. 34-5 at 12, 34, it then twice extended the deadline to provide the proof-of-loss form when counsel said his client could not visit the storage facility given her job schedule. No. 34-10 at 2–3, 5. And when Plaintiff, through counsel, submitted a deficient form in late January, Defendant again gave her more time. *Id.* at 1. But Plaintiff still failed to submit the documents necessary to "make a final coverage decision."[4] ECF No. 34-9 at 1.

That Defendant offered to resume its investigation and ascertain her entitlement to more insurance proceeds should she "comply with the conditions of the policy and complete the signed proof of loss," *id.* at 2, speaks to Defendant's willingness to accommodate her circumstances despite her many delays. But it did not in any way "signal . . . that the limitations period would not apply to" her. *Gardner*, 639 F. Supp. 3d at 142. As noted above, Plaintiff could have sued at any point during that process; any continued investigation into her claim to insurance proceeds was separate from her duty to timely file suit. In other words, extending the former does not pause the

---

[4] Plaintiff apparently never submitted a comprehensive proof-of-loss form. To date, she has submitted only a "partial" inventory. ECF No. 33-3 at 8.

8

latter.[5]  Defendant accommodated Plaintiff at every step in processing her claim; it was Plaintiff's "own inaction [that] kept [her] from filing a timely complaint." *Martinez*, 429 F. Supp. 2d at 58 (quoting *P'ship Placements, Inc. v. Landmark Ins. Co.*, 722 A.2d 837, 842 (D.C. 1998)).

Plaintiff's main argument is that Defendant's March 5, 2020, letter informing her that the "investigation" into her claim was "suspended" lulled her into inaction. *See* ECF No. 34 at 8–9. She argues that letter "reasonably" led her to "believe that the statute of limitation would not bar her claim because" Liberty "suspended the claim until" she provided "additional information" and because it "did not advise [her] that she must bring her claim within one year." *Id.* at 9. That is nonsense, especially for a claimant represented by counsel.

To begin, the policy included that statute of limitations, and an insurance company's "failure to call the [insured's] attention to the Policy's expressly delineated limitations provisions," as another court in this District has explained, is "surely not . . . an *affirmative* inducement" under District of Columbia law. *Martinez*, 429 F. Supp. 2d at 58 (emphasis added). And the letter makes no "representation," let alone a "misleading" one, on which Plaintiff reasonably could have relied in deciding not to sue within one year. *Bailey*, 516 A.2d at 939 n.5. The letter does not, for instance, ask her to hold off on taking legal action. Nor does it suggest that Defendant was prepared to pay her claim or "settle[d] amicably" any dispute about the amount of money owed. *Id.* at 939 (citation omitted). To the contrary, the March letter states that, from Defendant's perspective, it would take no further action because Plaintiff "failed to provide the details necessary for

---

[5] That is why it is irrelevant that Defendant "continued [to] adjudicate[e] . . . [Plaintiff's] 2015 and 2018 claims without any issue regarding the contractual limitation period"—a "c[ourse] of conduct" Plaintiff argues further led her to "believe that the limitation period was not an issue." ECF No. 34 at 9. Plaintiff does not contend that she ever sued Defendant over her prior claims. If anything, Defendant's continued adjudication of those claims shows that the claim-evaluation process operates independently of any contractual limitation on filing suit.

9

[an] investigation." *See* ECF No. 34-9 at 2 (concluding that the "investigation [was] suspended" and Defendant may "*reopen*" it if she complied with the terms of her policy (emphasis added)). As Defendant puts it, the letter "shows that it was Plaintiff, not Defendant, who caused the delay in adjusting the claim." ECF No. 35 at 1-2.  And in any event, as discussed above, that process is separate from Plaintiff's right to sue.  It would make no sense if the law allowed Plaintiff, represented by counsel, to extend her time to sue—in theory indefinitely—by failing to comply with the terms of her policy to provide proof of her damages.  Thus, Plaintiff has failed to raise a material issue of fact as to whether Defendant lulled her into not suing earlier. *Bailey*, 516 A.2d at 939.

### 2. Defendant Did Not "Waive" the Statute-of-Limitations Defense

Similarly, an insurance company may "waive[] its ability to invoke the limitations period," impliedly by "conced[ing] liability" and having "some discussion[s] of a settlement offer." *Bailey*, 516 A.2d at 938–39 & n.5; *Gardner*, 639 F. Supp. 3d at 142.  That rule sensibly "prevent[s] insurance companies from avoiding payment of claims by entering into prolonged negotiations and then withdrawing" once the limitations period has run. *Martinez*, 429 F. Supp. 2d at 60 (cleaned up and citation omitted).  But "investigat[ing]" an insurance claim is "not synonymous" with "initiat[ing]" settlement discussions, so an ordinary "claim evaluation process does not waive the insurer's right to assert" the limitations period as a defense. *Gardner*, 639 F. Supp. 3d at 142 (quoting *1426 Wisconsin*, 110 F. Supp. 3d at 269).

Nothing in the record suggests that Defendant discussed a settlement with Plaintiff or otherwise waived the limitations period; indeed, it was Plaintiff's own inaction that probably created a barrier to any such talks.  Defendant paid Plaintiff the damages it determined adequate based on its findings.  Defendant also invited Plaintiff to submit proof of her losses to justify a higher amount.  And when she failed to do so, Defendant suspended its investigation.  What else could it

have done? In any event, there is no evidence in the record of settlement discussions. And as noted, a claim investigation does not amount to "initiation of settlement discussions," which might give an insured reason to believe that strict compliance with the contractual limitations period is not required. *1426 Wisconsin LLC*, 110 F. Supp. 3d at 269. This case is thus far afield from circumstances where an insurer "enter[s] into prolonged negotiations and then withdraw[s] after the . . . limitation[s] period has passed." *Martinez*, 429 F. Supp. 2d at 60 (quotation omitted).

Plaintiff leans on Defendant's November 1, 2019, letter "addressing the issue of supplemental damages" to argue, it appears, that the parties were indeed engaged in something like settlement talks, with the sole issue being the amount of money owed after itemization of her losses. *See* ECF No. 34 at 3, 8. But that letter suggests nothing of the sort. In it, Defendant informed Plaintiff that it "issued a payment" related to the flooding incident in the amount of $950.01, an amount representing $26,216.31 for her "Dwelling/Home" and $6,769.51 for her "Personal Property" less prior payments, depreciation, deductibles, and money "paid when incurred." ECF No. 34-6 at 1. To be sure, Defendant accepted that the flooding incident was covered by the insurance policy, and it also acknowledged its obligation to pay damages. But at no point did Defendant "indicat[e] that further payment was forthcoming" or that the payment "w[as] for the purpose of settlement." *1426 Wisconsin LLC*, 110 F. Supp. 3d at 270 (citation omitted). So no "reasonable insured"—let alone her attorney—"could . . . have read" that letter as stating that Defendant was "waiv[ing] . . . the limitations period" or "intend[ing] to pay the remainder of the claim[s]." *Id.* Because Plaintiff points to no other evidence to back her argument that Defendant waived the statute of limitations, this exception to the limitations period does not apply.

> B. **Plaintiff's Claim for Breach of the Implied Covenant of Good Faith is Also Time-Barred**

"Every contract contains an implied covenant of good faith and fair dealing." *Sundberg*

*v. TTR Realty, LLC*, 109 A.3d 1123, 1133 (D.C. 2015).  At root, this covenant means "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) (citation omitted).  But this claim is time-barred under the same contractual limitations provision that forecloses Plaintiff's breach-of-contract claim, which broadly prohibits any "*action*" to "be brought . . . within one year after the date of loss."  ECF No. 33-4 at 24 (emphasis added).

Plaintiff presses three arguments against applying the limitations period, but none persuades.  First, she argues that Defendant waived this defense and "concede[d] that [her] claim for breach of the implied covenant . . . is proper" because it did not state in its motion "that the contractual statute of limitations applies" to that claim.  ECF No. 34 at 11.  Her argument is a non-starter.  Defendant states that Plaintiff brings "three" claims, ECF No. 33-2 at 2, and then proceeds to argue that (1) her "*claims*" are barred by the statute of limitations and (2) her unjust-enrichment claim fails because an express contract exists, *see id.* at 4, 7 (emphasis added).  This is not the stuff of waiver.  And considering Plaintiff then proceeds to argue why the statute-of-limitations bar should not apply to the claim for breach of the implied covenant, Defendant's motion seems to have been clear enough.  *Cf. Schaefer v. EPA*, No. 20-CV-2702 (CRC), 2023 WL 2663015, at *4 (D.D.C. Mar. 28, 2023) ("Although a party's failure to raise an issue in its opening brief usually constitutes waiver, the Court has discretion to consider such arguments where the other party had the opportunity to respond.").

Second, Plaintiff points to Defendant's "bad faith actions that were arbitrary and capricious," including "the way the claim was adjusted," its "refusal to inspect and value the personal properties," and its "decision to deny payment of the 1-800-packout storage fees."  ECF No. 34 at 11.  All of this puts the cart before the horse.  The Court need not—indeed cannot—consider the

merits of Plaintiff's claim for breach of the implied covenant if she cannot clear the contractual statute-of-limitations bar. Plaintiff cites no authority exempting this kind of claim from the ordinary rules.[6]

Plaintiff's third argument fares no better. She appears to suggest that, even assuming the limitations period applies, the District of Columbia's COVID-19-related emergency orders tolled it. *See* ECF No. 34 at 4–5, 11. Specifically, on March 18, 2020, the D.C. Superior Court ordered that "all statutory and rules-based time limits in the D.C. Code" be "tolled" in response to the Covid-19 pandemic until May 15, 2020. *See Amended Order*, D.C. Super. Ct. (Mar. 19, 2020), https://www.dccourts.gov/superior-court/covid-orders. The Superior Court extended the tolling period repeatedly until June 10, 2022. *See Amended Order*, D.C. Super. Ct. (June 10, 2022), https://www.dccourts.gov/superior-court/covid-orders. But the D.C. Superior Court orders evidently do not "provide for the tolling of *contractual* limitations period[s]." *Gardner*, 639 F. Supp. 3d at 143 (emphasis added).

### C. The Existence of An Express Contract Precludes Plaintiff's Unjust-Enrichment Claim

Plaintiff also asserts that Defendant was unjustly enriched because it "realized substantial premium[s]" while "withh[olding] the insurance payments" it owed her. Am. Compl. ¶¶ 26–28. But unjust enrichment is a quasi-contractual theory of recovery that "presupposes" no "express, enforceable contract" exists. *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C. 2010) (citing

---

[6] Plaintiff also hints at "actions" Defendant took "after the contractual limitation period" that, she presumably argues, rise to the level of a breach of the implied covenant of good faith. ECF No. 34 at 11. She asserts these actions occurred as late as July 2020. *Id*. But any claim for breach of the implied covenant of good faith based on those actions would be time-barred as well, because she filed suit in April 2022. And she does not argue that her implied-covenant-of-good-faith claim is somehow independent of her contractual claim or subject to a different statute of limitations.

*Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 279 (D.C. Cir. 2009)); *see Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 63 (D.C. 2005). It provides a remedy when "justice warrants a recovery as though there had been a promise." *Jordan Keys & Jessamy*, 870 A.2d at 63 (quoting Black's Law Dictionary 324 (6th ed. 1990)). Because an express contract governed the parties' conduct and Plaintiff has not challenged its validity or enforceability, Defendant is entitled to summary judgment on her claim for unjust enrichment.

Plaintiff acknowledges the "general rule" that an express contract bars an unjust-enrichment claim but argues that courts may still "allow" such a claim in various circumstances, such as "when the express contract does not fully address a subject matter." ECF No. 34 at 12. She provides no legal authority for this proposition. But she argues her claim "is based on the premiums she paid to cover her loss," which Defendant "unjustly retain[ed]" without "cover[ing] damages to her personal property." *Id.* In her view, the "claim for unjust enrichment . . . is based on equitable principles" and "is not contingent upon the niceties of the law of contracts and is not based on breach of contract." *Id.* at 13. But Plaintiff *does* assert breach of contract by challenging Defendant's refusal to do what she says her policy required. So the "niceties" of contract law *do* apply and preclude her claim here. *See Glasgow v. Camanne Mgmt. Inc.*, 261 A.3d 208, 215–16 (D.C. 2021) ("[C]ourts will not displace the terms of a contract and impose some other duties not chosen by the parties." (cleaned up and citation omitted)).[7]

---

[7] To the extent Plaintiff argues that her lawsuit is not an "action" for purposes of the limitations provision because it is an equitable action, she fails to recognize that "[t]here is one form of action—the civil action." Fed. R. Civ. P. 2; *accord* D.C. Super. Ct. R. Civ. P. 2.

14

## IV. Conclusion

      For all the above reasons, the Court will grant Defendant's Motion for Summary Judgment.

A separate order will issue.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: January 24, 2025